**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

HELENA BARINOVA,

           Plaintiff,

v.

ING and RELIASTAR LIFE INSURANCE COMPANY,

           Defendants.

Civ. No. 07-1085

**O P I N I O N**

---

*Appearances:*

CAHN & PARRA, LLC
By: Steven D. Cahn, Esq.
1015 New Durham Road
Edison, NJ 08817

    *Attorneys for Plaintiff*

MCCARTER & ENGLISH, LLP
By: Richard M. Eittreim, Esq.
    Joanne M. F. Wilcomes, Esq.
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

    *Attorneys for Defendants*

**DEBEVOISE, Senior District Judge**

Plaintiff, Dr. Helena Barinova, a former employee of Croda, Inc. ("Croda"), filed suit against Defendants, ING Financial Services ("ING") and ReliaStar Life Insurance Company ("ReliaStar," collectively, "Defendants"), under Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, claiming that ReliaStar improperly denied her claim for long-term disability benefits. All parties have moved for summary judgment. For the reasons set forth below, Plaintiff's motion will be denied, Defendants' motion will be granted, and the Complaint will be dismissed.

## I. BACKGROUND

ING provides employee benefits products and services to corporations and businesses through its affiliate, ReliaStar. Croda purchased a group long-term disability insurance policy (the "Policy") from ReliaStar as part of its employee welfare plan. The Policy was active throughout Barinova's employment at Croda.

Under the Policy, employees who become disabled are eligible for a monthly payment of the lesser of 60% of the employee's "Basic Monthly Earnings," or $13,000, subject to any "Other Income" which would offset the monthly benefit. The time period for disabilities related to mental disorders is limited to 24 months, unless the employee is confined to a hospital. The Policy requires that the claimant be insured at the time he or she becomes disabled[1], and the

---

[1] The Policy provides the following:
   To qualify for benefits, the employee must:
   - Be insured on the date he or she becomes disabled;
   - Be insured on the date the benefit waiting period begins;
   - Send written notice of the disability as described in the Claim Procedures Section; and
   - Be receiving regular and appropriate care and treatment.

employee must remain "actively at work" in order to remain insured.

The Policy defines "actively at work" as follows:

> The applicant is physically present at his or her customary place of employment with the intent and ability to work the scheduled hours and do the normal duties of his or her job on that day.

The only exception to the "actively at work" requirement is for employees on a medical leave authorized by the Family Medical Leave Act of 1993 ("FMLA").[2]  Additionally, eligibility is limited to disabled employees who are receiving regular and appropriate care.  According to the Policy, in order to be "under the regular and appropriate care of a physician," the employee must:

1. Personally visit a doctor as often as is medically required, according to generally accepted medical standards and consistent with the stated severity of the medical condition, to effectively manage and treat the sickness or injury;
2. Receive care which conforms with generally accepted medical standards for treating the sickness or injury and is consistent with the stated severity of the medical condition;

---

[2]The policy terminates at the earliest of the following dates:
- The date the employee is no longer actively at work for the Policyholder;
- The date the employee is no longer eligible for Insurance under the Group Policy;
- The date the Group Policy stops; or
- The date the employee retires.

The only exception to the "actively at work" requirement is described as follows:

> Certain employees are subject to the FMLA.  If an employee has a leave from active work certified by the employer, then for purposes of eligibility and termination of coverage he or she will be considered to be actively at work.  The coverage will remain in force so long as he or she continues to meet the requirements as set forth in the FMLA.

> 3. Receive care from a doctor whose specialty is most appropriate for the disability according to generally accepted medical standards; and
> 4. Receive or actively seek appropriate physical or psychological rehabilitative services.

Barinova began working as a research and development manager for Croda in March 1992. On May 6, 2004, Croda placed Barinova on administrative leave for an alleged violation of company policy. She remained on administrative leave until she was terminated in December 2004. On May 17, 2004, Barinova visited Dr. Pamela Call, who completed an application for Barinova under the Family and Medical Leave Act of 1993 ("FMLA"), certifying that Barinova was suffering from a major depressive disorder and required treatment. Croda accepted Barinova's FMLA leave application. The FMLA provides for a medical leave of up to twelve weeks for qualifying illnesses, and Barinova's FMLA leave expired on September 1, 2004. Dr. Call's treatments appear to be limited to a few follow-up telephone conversations and the recommendation of antidepressant drugs during this twelve week period. No treatment records or prescriptions were located, and the extent of the treatment has not been substantiated. On October 20, 2004, Barinova began more extensive treatment for her depression with Dr. Grigory Rasin.

On January 20, 2005, after Croda terminated Barinova's employment, Barinova filed a claim for long-term disability benefits under the Policy. ReliaStar denied Barinova's claim on the grounds that in order for an employee to be eligible for disability benefits under the Policy, she must be (1) "actively at work" at the time she becomes totally disabled, and (2) under the regular care of a physician while she is still insured. ReliaStar argues that Barinova was denied disability benefits because she did not begin receiving regular and appropriate care until October

20, 2004, and because she was no longer "actively at work" as of September 1, 2004. Thus, prior to September 1, 2004, although she was "actively at work," she was not receiving regular and appropriate care, and, after October 20, 2004, although she was receiving regular and appropriate care, she was not "actively at work." In the interim, from September 1, 2004 to October 20, 2004, she was neither "actively at work" nor receiving regular and appropriate care. Therefore, Reliastar argues, Barinova never came to be eligible for benefits.

On May 16, 2005, Barinova appealed ReliaStar's initial determination to the company's Appeals Committee. Barinova submitted a letter from Dr. Rasin, which stated that Barinova was psychiatrically disabled at the time of his evaluation in October, 2004, and likely disabled prior thereto. ReliaStar consulted with an outside board-certified psychiatrist, Dr. Leonard Kessler, who, based on a review of Barinova's file, determined that Barinova had not been receiving regular care and treatment for major depression prior to September 1, 2004. Based on Dr. Kessler's assessment, and the lack of any evidence to the contrary, ReliaStar concluded that Barinova was ineligible for benefits prior to September 1, 2004 because she was not receiving regular and adequate care.

On March 20, 2006, Barinova again petitioned the Appeals Committee determination to reconsider her claim for benefits, but her appeal was denied.

## II. DISCUSSION

Barinova argues that her motion should be granted on grounds that she was "actively at work" until December 2004, and that it is undisputed that she was receiving regular and appropriate care as of October 20, 2004. Barinova argues that the Defendants' motion should be

5

denied because there is an issue of fact as to whether she was receiving regular and appropriate care prior to October 20, 2004. Barinova's motion will be denied, and Defendants' motion granted, because the court must accept ReliaStar's determinations that Barinova was no longer "actively at work" as of September 1, 2004, and was not under the regular and appropriate care of a physician prior to October 20, 2004.

The court applies the arbitrary and capricious standard of review, and accepts ReliaStar's determination denying Barinova's claim for disability benefits. The Policy provides the following:

> ReliaStar Life has final discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of this policy(ies) of insurance.

Because Defendants' determinations are entitled to deference, both ReliaStar's determination that the Policy excluded Barinova from benefits for any disability which commenced after September 1, 2004, and ReliaStar's determination that Barinova was not under the regular and adequate care of a physician prior to October 20, 2004, will be upheld.

### A.     Summary Judgment Standard

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. In deciding whether there is a disputed issue of material fact, the

court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).

B.      **Standard of Review for a Denial of Benefits**

The Court generally applies a de novo standard of review for a denial of benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  However, if the administrator of the plan has been vested with discretionary authority, the court applies an arbitrary or capricious standard of review.  Id.  With this standard of review, the insurance carrier's determination is upheld unless it is "unreasonable, unsupported by substantial evidence, or erroneous as a matter of law."  Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 392 (3d. Cir. 2000).  In this case, the Policy states: "ReliaStar Life has final discretionary authority to determine all questions of eligibility and status and to interpret and construe the terms of this policy(ies) of insurance."

However, the court will review a company's determination with less deference when the claimant and the company have conflicted interests.  Pinto, 214 F.3d at 392.  Barinova argues that a heightened standard of review is appropriate in this case because Reliastar, as an insurance carrier, both funds and determines the course of the Policy.

With regard to her first conflict of interest argument, Barinova is not a former employee of ReliaStar.  A heightened standard of review is only appropriate for former employees of insurance carriers, Koshiba v. Merck & Co., 384 F.3d 58 (3d Cir. 2004).  Barinova's past disagreements with Croda are unconnected to the determinations of ReliaStar.

7

A conflict of interest also exists when the insurance carrier both determines and funds a plan. Pinto, 214 F.3d at 388. When insurance carriers have an incentive to deny benefits in close cases to save money, a more heightened scrutiny than the arbitrary and capricious standard of review is appropriate. Id. The Third Circuit Court of Appeals has adopted a sliding scale to determine the amount of deference given to the insurance carrier: the greater the conflict of interest, the greater the scrutiny. Id. at 92. When the conflict of interest is based solely on the inherent structure of the insurance carrier with no further evidence of bias from the plaintiff, the insurance carrier's determination will be given a "moderate degree of deference." Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 385 (3d Cir. 2003). Since ReliaStar both interprets and funds claims made by Croda employees, the court will review Reliastar's determinations with moderate deference.

C.     **Actively at Work**

Barinova argues that she has fulfilled all of the requirements to be eligible for disability benefits, and that, because Defendants agree that Barinova was under the regular and appropriate care of a physician as of October 20, 2004, she was entitled to disability benefits under the Policy from October 20, 2004. While ReliaStar determined that Barinova was not eligible for benefits after her FMLA leave expired, Barinova contends that the "actively at work" requirement applies to any employee who remains employed by the company. Barinova argues that because she was employed by Croda until she was terminated, she should be considered to have been "actively at work" and eligible for disability benefits.

The Defendants argue that in order to be "actively at work" an employee must be present at work or on FMLA leave. They contend that Barinova cannot have been considered "actively

at work" after September 1, 2004, because she was on administrative leave and no longer eligible for FMLA leave. Defendants argue that ReliaStar's interpretation of the Policy that Barinova was no longer "actively at work" after September 1, 2004, when her FMLA leave expired, is reasonable, and that Barinova's motion for summary judgment should be denied.

Barinova argues that Defendants' interpretation of the Policy to exclude her from benefits is unreasonable, but an insurance carrier's interpretation of ambiguous policy terms is upheld so long as it "is rationally related to a valid plan purpose and not contrary to the plain language of the plan." DeWitt v. Penn-Del Directory Corp., 106 F.3d 514, 520 (3d Cir. 1997). In this case, the Policy provides for the termination of eligibility when an employee is no longer "actively at work." The Policy is not ambiguous. It states that the Policy terminates when an employee is no longer "actively at work", and other provisions of the policy make clear that an employee on leave is not "actively at work."

Barinova argues that she meets the "actively at work" requirement because employees on administrative leave should qualify to receive benefits because they continue to receive salary and benefits. However, the plain language of the Policy makes clear that the only exception to the "actively at work" requirement is for employees remaining eligible for FMLA leave.

Barinova contends that this interpretation is contrary to the purpose of the Policy to provide benefits to disabled workers. However, the Defendants are entitled to limit such eligibility to workers who are active employees and not employees on an extended leave. Furthermore, the FMLA exception to the "actively at work" requirement protects employees on short-term disability so long as they qualify for long-term benefits before their FMLA eligibility expires. While limiting employees' eligibility for benefits to their eligibility for FMLA may

seem unkind, ReliaStar's interpretation will be upheld under this standard of review because it is not contrary to the Policy terms.  DeWitt, 106 F.3d at 520.

Barinova also argues that "actively at work" requirement does not apply because internal documents stated that she was eligible for benefits until November 12, 2004, and because of an additional provision of the Policy providing "Continuity of Coverage" for employees who were already disabled at the time the Policy went into effect.  The first argument is unavailing.  Even if the referenced internal document did indicate that Barinova remained eligible for benefits–and it is not clear that the document says anything at all about her eligibility–Croda's employees' organizational memoranda and opinions do not bind the Defendants and are not instructive or determinative in this interpretation of the Policy.

Additionally, the "Continuity of Coverage" provision itself does not support Barinova's claims.  The Policy provides that the "actively at work" requirement will be waived if an employee is not "actively at work" on the Policy's effective date and that employee was covered under the policyholder's prior group disability income plan.  In this case, it is undisputed that Barinova was "actively at work" on the Policy's effective date, and the "Continuity of Coverage" provision has no application at all in the present dispute.

Barinova was no longer "actively at work" once her FMLA leave expired on September 1, 2004.  While she seems to have satisfied the other requirements for benefits as of October 20, 2004, she is not entitled to benefits for a claim that ripened only after she was no longer "actively at work."  Therefore, Barinova's motion for summary judgment will be denied, and Defendants' motion will be granted.

**D.      Regular and Appropriate Care**

Having resolved that Barinova is not entitled to summary judgment because she was no longer "actively at work" after September 1, 2004, the court now considers the question of Barinova's eligibility for disability benefits prior to September 1, 2004.  Defendants argue that because ReliaStar made a reasonable, evidence-supported determination that Barinova was not under the regular and appropriate care of a physician prior to September 1, 2004, their motion for summary judgment must be granted.  Barinova argues that there is a triable issue of fact as to whether she began receiving regular and appropriate care prior to September 1, 2004.

Reliastar documents its independent review of Barinova's medical records which plainly support Reliastar's determination that Barinova did not begin receiving regular and appropriate care until after October 20, 2004.  Barinova argues that the court should not ignore the "disability certification" of Dr. Call and the medical report of Dr. Rasin, but neither of these documents constitutes evidence that Barinova received any treatment between May 17 and October 20, 2004.  Reliastar relied upon the advice of Dr. Kessler that the appropriate care for someone with Barinova's diagnosis would include "intensive psychotherapy to address personal as well as relevant occupational conflicts, on, at least, a weekly basis by a doctoral level therapist" and "a partial hospitalization program, intensive outpatient treatment, [or] . . . cognitive/behavioral treatment, as well as medication."  Barinova was apparently unable to produce any evidence that she received any of the aforementioned care during the period from May 17, 2004 to September 1, 2004.  In fact, Barinova admits that, after her initial consultation with Dr. Call, she only received "occasional counseling on a few occasions, kept in contact via phone and [was] prescribed anti- anxiety [sic] and anti-depressive medications."

Reliastar determined that Dr. Call's treatment was insufficient for major depression because there was no evidence that she was receiving continuous medical care.  Furthermore, Barinova's attending physician, Dr. Rasin, who opined that Barinova was disabled from at least May 2004, does not contend that she was under appropriate medical care from that date.  While under a de novo standard of review, there might be a genuine issue of material fact as to whether Barinova was under regular and appropriate care, here the court gives moderate deference to Reliastar's determinations which clearly were supported by substantial evidence.

There is no issue of fact as to whether Reliastar's determination was "unsupported by substantial evidence."  Pinto, 214 F.3d at 392.  ReliaStar reasonably determined that Barinova was not disabled on or before September 1, 2004.  The court must uphold this determination, and will grant Defendants' motion for summary judgment.

### III. CONCLUSION

For the reasons set forth above, the Plaintiff's motion for summary judgment will be denied and the Defendants' motion for summary judgment will be granted.  An appropriate order implementing this opinion will be entered.

　　　　　　　　　　　　　　　　　　　　　　　　　　 s/ Dickinson R. Debevoise
　　　　　　　　　　　　　　　　　　　　　　　　　　 DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: September 10th, 2008